IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AT&T CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1012 GMS |
| | ) | |
| MOSAICA EDUCATION, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

## I.    INTRODUCTION

On November 5, 2003, AT&T Corporation ("AT&T") filed the above-captioned action against Mosaica Education, Inc. ("MEI") for breach of contract, tariff violation, and quantum meruit/unjust enrichment.[1]  The complaint specifically alleges that MEI failed to pay for certain telecommunication services that AT&T rendered at MEI's request.  AT&T seeks to recover $362,293.29 for the services it provided.

Presently before the court is the plaintiff's motion to enforce a settlement agreement between the parties.  For the following reasons, the court will deny the motion.

## II.    BACKGROUND

As previously mentioned, AT&T filed this action in November 2003, seeking a judgment of $362,293.93, plus applicable fees and interest for MEI's alleged breach of a contract providing telecommunications services.  The action was initially set for trial, but continued at MEI's request.  With the trial date continued, the parties engaged in settlement negotiations in an attempt to resolve

---

[1] On May 18, 2007, the court granted AT&T's motion to amend and join a party.  (See D.I. 76.)  As a result, Mosaica Advantage, Inc. was added as a defendant to the case.  Because counsel for MEI had the lead role in settlement negotiations, the court refers to both defendants as MEI.

their dispute.  The settlement negotiations were ongoing from the summer of 2007 until December 27, 2007, and are detailed in email correspondence between the parties.

On July 10, 2007, AT&T sent MEI an email noting that MEI had offered to settle the case for $140,000, payable over 14 months.  AT&T's email rejected MEI's offer and provided a counteroffer of $200,000, payable over 12 months to settle all claims and defenses.  MEI responded on August 2, 2007, rejecting AT&T's counteroffer and presenting its own counteroffer of $150,000, payable over 12 months.

On August 22, 2007, AT&T rejected MEI's counteroffer and presented a final counteroffer, noting that it would accept $175,000 to settle the litigation in full, payable over a 14 month period in the amount of $12,500 per month.  The final counteroffer would remain open until August 29, 2007.

On August 29, 2007, the parties corresponded through a series of 6 emails, finally reaching agreement on the settlement amount.  MEI accepted AT&T's final counteroffer, provided that its obligation would be evidenced by a cognovit note[2] and stipulation of dismissal.  AT&T responded favorably, but noted that the confessed judgment would be for the full amount that it was seeking, $362,293.93, plus interest and attorneys' fees.  MEI answered AT&T's email stating that the parties had not discussed the issue of default and confessed judgment.  MEI understood that the settlement needed to include a provision to insure its payment, but felt that AT&T's recommendation was too Draconian.  MEI proposed $300,000, plus interest from the date of the cognovit note at 9%,

---

[2] A cognovit note is "[a] promissory note containing a cognovit clause[,]" or "a contractual provision by which a debtor agrees to jurisdiction in certain courts, waives notice requirements, and authorizes the entry of an adverse judgment in the event of a default or breach."  Black's Law Dictionary 277 (8th ed. 2004).

attorneys' fees, and costs.  MEI also proposed that the default provision(s) should include reasonable notice to it and an opportunity to cure the default – written notice and a 15 day grace period to cure the default.  Counsel for AT&T believed that AT&T would react favorably to MEI's proposal,  if the confessed judgment was in the amount of $363,000, with no pre-settlement interest, 9% interest in enforcing the cognovit note, and no attorneys' fees, except for those incurred to enforce the note.  MEI responded stating, "We're confirmed (obviously subject to a review of the final forms)."  (D.I. 91, Ex. 1A at 13.)  The court is not aware of any further correspondence between the parties on the issue until November 2007.

On November 28, 2007, counsel for AT&T sent MEI an email inquiring where the parties stood on the issue and referencing "differences which have arisen after the last settlement agreement."  (Id. at 12.)  The email also indicated that AT&T was prepared to either file to enforce the settlement agreement or set the matter for trial.  Counsel for both parties corresponded further regarding reserving their rights to argue that there was or was not a settlement.  Counsel for MEI sent an email to counsel for AT&T enclosing a rough draft of a settlement concept, which provided default provisions and an outline for curing default and enforcing the cognovit note.  According to the email, MEI was concerned with its "ability to control the downside risk by making good faith efforts to pay on-time."  (Id. at 10.)  Counsel for AT&T replied that the proposal created "far too long a time period[,]" because MEI could take 120 days to make a payment with only a 5% penalty. (Id. at 9.)  The email further included some revisions to MEI's settlement concept.

On December 14, 2007, counsel for MEI emailed AT&T regarding the revisions.  The email noted that MEI would probably agree to the timeline changes, but not with the changes made to the final judgment amount.  Counsel for MEI explained MEI's intent with respect to default by way of

example: if MEI had made half the payments before becoming unable to pay, then AT&T's judgment would be for half of the $362,000. The email further explained that the $362,000 judgment issue was "huge" for MEI. (Id. at 8.) Counsel for AT&T responded, seeking further compromise from MEI regarding the default amount and ratio. MEI acquiesced, offering a ratio of $362,000 to $175,000, or the front end ratio that AT&T originally proposed and a pro rata reduction for any payment that MEI would make. Counsel for AT&T noted that he would have to get the final plan approved.

On December 20, 2007, the court held a teleconference with the parties to discuss the status of the case. Prior to the teleconference, the parties informed the court that they were close to settling the matter. During the teleconference, the court directed the parties to continue settlement discussions and report back by December 27, 2007.

On December 27, 2007, the parties filed separate status reports. AT&T's status report states that an enforceable settlement was reached. It also states that AT&T intended to file a motion to enforce the settlement agreement. MEI's status report states that the parties were unable to reach a settlement of the litigation.

## III.   STANDARD OF REVIEW

A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *Leonard v. Univ. of Delaware*, 204 F. Supp. 2d 784, 787 (D. Del. 2002). Motions for enforcement of settlement agreements resemble motions for summary judgment. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991). Therefore, the court must employ a similar standard of review. *See id.* The court must treat all the non-movant's assertions as true, and "when these assertions conflict with those of the movant, the former must receive the benefit of the

doubt." *Id.* at 1032.   Accordingly, "[c]ourts should not summarily enforce purported settlement agreements, in the absence of an evidentiary hearing, where material facts concerning the existence or terms of an agreement to settle are in dispute." *The Intellisource Group, Inc. v. Williams*, C.A. No. 98-57-SLR, 1999 U.S. Dist. LEXIS 12446, at *10 (D. Del. Aug. 11, 1999).

## IV.   DISCUSSION

On January 11, 2008, AT&T filed the motion to enforce settlement that is presently before the court.   It is AT&T's position that the parties reached an enforceable settlement agreement on all essential terms, and all that remains is to cement that agreement in writing.   According to AT&T, the terms of the purported agreement contain the following provisions: (1) MEI will pay AT&T $175,000, to be paid in 14 installments of $12,500; (2) in the event that MEI fails to make any payment, it will be in default and if it fails to cure that default within 15 days, AT&T may make an application to the court for the entry of judgment in favor of AT&T for $362,000 plus attorneys' fees, costs and 9 % interest, and less the payments already received from MEI; and (3) AT&T and MEI will enter a stipulation of dismissal.

MEI, on the other hand, challenges the existence of a settlement agreement between the parties.   More particularly, MEI argues that the default provision of the settlement agreement is an essential contract provision, and that the default issue is hotly contested.[3]   The court agrees.

It is well-settled that the court "has jurisdiction to enforce a settlement agreement entered into by the parties in a case currently pending before it." *Liberate Technologies, LLC v. Worldgate Communications, Inc.*, 133 F. Supp. 2d 357, 358 (D. Del. 2001); *see also Intellisource*, 1999 U.S.

---

[3] MEI does not challenge AT&T's contention that MEI agreed to pay $175,000, in 14 installments of $12,500.

Dist. LEXIS 12446, at *10.  To do so, the court must determine whether the settlement agreement at issue is an enforceable contract under Delaware law.  *See Intellisource*, 1999 U.S. Dist. LEXIS 12446, at *12.  "Under Delaware law a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'"  *Id.* (citing *Telephone & Data Sys., Inc. v. Eastex Cellular L.P.*,  Civ. A. No. 12888, 1993 WL 344770, at *10 (Del. Ch. Aug. 27, 1993)).  In other words, an enforceable contract exists if the parties have reached a definite agreement on all essential terms.  *See Intellisource*, 1999 U.S. Dist. LEXIS 12446, at *12.

In the present case, while it appears at first blush that the parties reached a settlement agreement on August 29, 2007, a further reading of the email correspondence between the parties demonstrates that they have not reached a definite agreement on at least one essential term of the settlement – the default provision.  As previously mentioned, on August 29, 2007, counsel for MEI sent an email to counsel for AT&T stating that the settlement was "confirmed (. . . subject to a review of the final forms)" for $175,000, payable over a 14 month period, with a confessed judgment in the amount of $363,000, no pre-settlement interest, 9% interest in enforcing the cognovit note, and no attorneys' fees except for those incurred to enforce the note.

The parties did not file settlement forms with the court but, rather, reopened negotiations on November 28, 2007, when differences arose regarding the default provision.  Indeed, counsel for AT&T sent an email to MEI on November 28th that references "differences which have arisen after the last settlement agreement."  (D.I. 91, Ex. 1A at 12.)  The parties then engaged in a further email exchange, which included various proposals by each as to the amount of payment in the event of a default and the length of time MEI would have to cure a default.  During this email exchange,

counsel for MEI unequivocally stated that "the $362,000 judgement [sic] is huge for my boss." (Id. at 8.) Counsel for MEI further stated, "If we can resolve this fundamental difference, I think we can get this [the settlement] done." (Id.) Counsel for AT&T responded, inquiring what default ratio would be the best that MEI's counsel could sell to the client. Counsel also noted that he believed he could get AT&T to budge on the ratio, because MEI was willing to accept some time frame changes proposed by AT&T. (Id.) Finally, on December 14, 2007, counsel for AT&T informed counsel for MEI that he would "have to go back and get this [MEI's final proposal] approved." (Id. at 1.) The email correspondence and statements made by counsel for both parties therein illustrate that the parties had not reached a definite agreement on all essential terms of the contract as of the time AT&T filed its motion. Accordingly, material facts concerning the existence and terms of the alleged settlement agreement are genuinely in dispute, and the court will not enforce the agreement submitted by AT&T.

Dated: July 10, 2008                        /s/ Gregory M. Sleet
                                            CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AT&T CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1012 GMS |
| | ) | |
| MOSAICA EDUCATION, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1.      AT&T's Motion to Enforce the Settlement Agreement (D.I. 91) is DENIED.


Dated: July 10, 2008                               /s/ Gregory M. Sleet
                                                    CHIEF, UNITED STATES DISTRICT JUDGE